Thank you. We'll reserve the decision. Finally, we'll hear United States v. Cheng. Good morning, Your Honors. May it please the Court. I'm Megan Bennett. I represent Defendant Appellant Jianguo Cheng, who is challenging his appeal, his sentence, as procedurally unreasonable for four different reasons. I'm going to start by mentioning that I'm nursing a cold, and if I sneeze, I have some supplies over here. The four reasons that Mr. Cheng is challenging his appeal are these. One, the District Court clearly erred in its final statement with respect to his cooperation that, and I will quote, that Mr. Cheng, that though she would be inclined to give him some consideration for cooperating, it apparently hasn't been useful at all. The District Court didn't consider any of the cooperation Mr. Cheng provided prior to 2015, when he was . . . after he was released from his Southern District case. But you say that the District Court didn't consider it. I mean, it was all presented to the District Judge, right? There was argument at the sentencing about the post . . . about the October 2015 order. The judge was aware of it, right? The judge was certainly aware of it, and the government . . . And the judge didn't specifically refer to it in sentencing? The judge did not refer to it at sentencing, whereas she did refer to and discuss at length with the parties the 2015 onward cooperation. So there was no discussion at sentencing, but it was raised by the parties, and the government acknowledged that it was a relevant consideration. It's hard to argue that she didn't consider it. I mean, she may have given it little weight, if any weight, but she clearly was aware of it and had it on her mind and decided it wasn't worth anything. Well, I agree that it was . . . I'm going to call these two categories of cooperation, the pre-2015 and the 2015 onward. It's clear that both of those categories of cooperation had been raised by the parties in their sentencing submissions. And then at sentencing, there's an extensive conversation about the 2015 on cooperation, and there's no discussion in the . . . during the sentencing colloquy about the earlier cooperation. So I agree that the issue was before the court. I agree that the court opted not to give any record as to whether the court engaged in a consideration of the pre-2015 cooperation, because when she says that she would have been inclined to give consideration for it, it apparently hasn't been useful at all. That's contradicted by the evidence in the record about the assistance Mr. Cheng provided to investigators in Albany in connection with the murder of a family there. It's inconsistent with the evidence that was presented about the credit card fraud ring with . . . about which he provided information. And the government never . . . never contested that he had provided assistance in those cases. So I think that the confusion here is in the court's statement that it apparently hasn't been useful at all clearly refers to the government's . . . what I would call the minimization of his post . . . of his 2015 onward cooperation. So I agree. The issue was presented. The court did acknowledge that there had been argument about cooperation. The government took the position that the cooperation was not especially useful. Isn't that right? The government did. And our argument is that the district court had an independent duty considering the fact that the co-defendant's cases were before the same judge and that she had knowledge of the sequence of the guilty pleas procured in all of those cases and the timing which matched the defense's argument that his assistance had been helpful. In particular, I'd point to page 76 of the appendix which takes place . . . it's a letter in June of 2017 wherein the defense counsel asks the district court for an adjournment because there are ongoing issues with co-defendants and Mr. Cheng may have the opportunity to continue to be helpful. And that's, you know, June of 2017 after the government has asserted that Mr. Cheng's utility was almost meaningless. So I think there's an inherent contradiction in what the court was looking at and instead of sorting that out, instead of exercising her independence and the discretion that she was required to exercise, she solely relied on the government's minimization of Mr. Cheng's assistance. Now, similarly on the immigration detention, Mr. Cheng was . . . procedurally, Mr. Cheng had been released in 2011 from his Southern District case. He was then at liberty for about four years until he's taken into Immigration and Customs Enforcement custody in December of 2015, essentially simultaneous with the arrest of the co-defendants in the Zheng prosecution in the Eastern District of New York. He's kept in immigration custody until . . . He's in custody pending deportation, right? Not pending criminal prosecution. Well, we don't know. I did make a . . . Defense counsel said he was in custody because there was an immigration detainer and at the same time . . . Here's the appendix at 345. The court asked, wasn't he in immigration custody based on his prior convictions that they were seeking to deport him? The answer was, that's correct, Your Honor. And then the defense counsel also says, if you go further to, I believe it is . . . 356, defense counsel again does ask for credit for time that he spent in immigration custody. Oh, credit, I suppose. You can always ask for credit, but there's no factual dispute that he's in immigration custody based on prior convictions that are leading to deportation proceedings, right? Defense counsel says that he was in immigration custody for purposes of detention, but defense counsel also says that there were ongoing proffer meetings with the government during those six months. No, nothing prevents you from talking to people while they're in immigration custody awaiting deportation. Right, so then the question is, would the bail application have been made prior to May of 2016 had the defendant been in custody solely for deportation purposes or in fact, as we contend . . . Without cooperation. Would he have been able to make a bail argument on his deportation? Really the question is, what was the purpose of that detention? And so whatever defense counsel may have said, and I understand that perhaps this goes to a waiver argument, but whatever defense counsel may have said, we've made a TUI request for the immigration file and the Department of Homeland Security has failed to produce it. As the Ninth Circuit said in Zabala, the government is uniquely situated to produce that information. We could have the answer in the immigration file if the court were to remand this case to the district court, give us the opportunity to review the immigration papers, which would reveal what the purpose of the detention was. Because remember, he'd been out of custody for four years before December of 2015. He's brought . . . That's true of a lot of people who find themselves in immigration custody. But he's brought into immigration custody simultaneous with the arrest of the defendants in Zheng, the people against whom he'd been providing information for several months before that arrest. And the timing of that, the sort of serendipitous timing of his detention by Immigration and Customs Enforcement and his release upon signing the cooperation agreement strongly suggests that his detention is for purposes of the pending prosecution, not for removal purposes. We would ask the court remand this case and direct the government to produce the immigration file as they are uniquely situated to answer that question. Thank you. Thank you. We'll have some rebuttal. We'll hear from the government. Good morning, your honors. May it please the court. My name is Maria Cruz Melendez and I'm an assistant United States attorney in the Eastern District of New York and I represent the United States, the appellee in this matter. The appellate asserts that the guideline sentence of 68 months imprisonment imposed by the district court was procedurally unreasonable. In support of the assertion, he raises four claims, each of which lacks merit. Prior to and at sentencing, the district court heard appellant's objections, reviewed written submissions, held a fatical hearing, made numerous findings of fact related to each of the appellant's claims, properly calculated the guidelines range and considered the 3553A factors in fashioning the sentence. Your adversary says that Judge Ammon didn't adequately consider the first wave of cooperation. Your honor, and with all due respect to appellant's counsel, I would point out that Judge Ammon did in fact discuss pre-2015 cooperation. At sentencing, at appendix 343 to 334, defense counsel was discussing the benefits that she purported were given to the government and to ICE prior to 2015 and the court stated, quote, the problem with that, he was dropped from ICE in 2015, but while he was working with ICE, he was also engaging in extortion activities and beatings according to charges in this indictment. And your honor, the government would suggest that this statement here is, your honor, is the district court reviewing the allegations that defense counsel had made that there had not been any due consideration. This colloquy here, this exchange between defense counsel and the court is specifically dealing with the cooperation that was given to ICE, which is the pre-2015 cooperation. Pre-2015 was canceled out by his criminality at the same time. That's correct. Post-2015 cooperation was useless and therefore not entitled to much. Well, exactly. And I think the court ultimately determined that under all of the circumstances, while the court believed that, quote, he or she could have well benefited him if he hadn't made the choices he had obviously made in the past to try to cooperate with the government authorities and at the same time running gambling businesses and engaging in extortion. I think what the court was explaining during the many times in which the district court discussed the defendant's cooperation during sentencing and at other conferences is the fact that ultimately it was very difficult for the district court to give much weight at all to the defendant's cooperation given his continued criminal activity. Your Honor, with respect to defense counsel's statement, and prior, before I move on to the next issue, Your Honor, I just would also state that the district court was under no obligation at all to give any specific weight to cooperation. As long as the sentence that's imposed is reasonable and does not shock the conscience, then the district court is under no obligation to particularly give credit for cooperation. Even assuming the cooperation is at the level that appellant has stated, which the government would state is not the case here. With respect to the request for credit for the time spent in immigration custody, I think Your Honors correctly point out that the defense counsel conceded no less than ten times, orally and in written submission, that the defendant was in immigration custody for the purposes of deportation. In fact, the defense counsel went so far as to say that the government would have been more than happy and more than willing to let the defendant be deported. The defense counsel said, quote, it's been the government's intention, as I understood it, not to charge him, but to let him be deported. That's at appendix 318. But even more so, appellant is now not only stating that the district court should have made a substantial variance based on this time spent in immigration, but in fact, that there should be a remand for a hearing, and that the district court somehow erred for not making particular findings about how much credit should be given. But as even Zavala pointed out, and I think this is the reason why appellant's counsel's reliance on Zavala is misplaced here, is that it is not the district court's place to provide section 3585 credit. It's the job of, I believe Zavala says this in footnote three, it's the job of the Bureau of Prisons and the Attorney General to calculate the credit that is given for official detention. And this is based on the Supreme Court's case in Wilson. It's a 1992 case, and I believe the Second Circuit has precedent that also follows Wilson. That ultimately, a defendant must first begin serving his sentence. He must exhaust all administrative remedies in order to receive credit. And if that credit is not applied by the Bureau of Prisons, then the remedy is for the defendant through habeas corpus to seek a finding by the district court as to whether or not there was any portion of official detention that should ultimately be applied to the defendant's sentence. Wait, wait, the district court can certainly consider time in immigration custody. Absolutely, can vary if the district court wishes, based on the fact that the defendant was in immigration custody. That's absolutely true, and I believe that that's what defense counsel below was asking for. What I would state, Your Honor, is that the appellant here is stating that there's a basis for error. Ultimately- Ms. Bennett can cover her own basis on this, but I think what she's saying is that Judge Ammon didn't adequately consider the fact that he was in immigration custody longer than he would otherwise have been. Because he was trying to cooperate with the government, and they basically discouraged him from making a bail application. So he was in custody longer than he otherwise would have been. And to that, Your Honor, I would say two things. First, I would say that the record belies that. The record shows that the reason that the defendant was in immigration custody was because he had a mandatory deportation. Because he was supposed to be mandatorily deported. There was no final deportation order. And so during the six months that the defendant was in immigration custody, he was there because he was challenging deportation. And there were no final, the proceedings had not finalized at that time. And as I mentioned, defense counsel below concedes this issue on more than ten times, I believe, in total, 11 times by the government's count. With respect to the question as to whether or not the court gave it due weight, as I mentioned with respect to the question of cooperation, this court has consistently held that when considering 3553A factors, the district court is under no obligation to give a particular amount of weight when ultimately fashioning a sentence if they properly consider the 3553A factors. Defense counsel in its sentencing submission and during oral argument, during sentencing, spent plenty of time explaining to the court why the court should consider giving this credit and varying substantially based on this credit. And ultimately, the district court rejected that. The mere fact that the district court ultimately rejected the request for credit based on both cooperation and immigration does not render it procedurally unreasonable. Your honors, ultimately, appellant has failed to meet its heavy burden of establishing either procedural or It's the government's belief that there might be suggestions that there were also substantive unreasonableness problems with respect to the sentence. I would argue that the district court's sentence in this case was both substantially and procedurally reasonable. With respect to the other issues brought by defense counsel in its brief, if the court has no questions with respect to that, the government is happy to rely on its briefing with respect to those issues. The district court properly calculated the guidelines range and the record reflects that she considered all of the 3553A factors. The government, therefore, requests that this court affirm the defendant's sentence, your honor. Thank you. We'll hear the rebuttal. Thank you, your honors. To Judge Sullivan's point, yes, I was asking, we were asking it at the district court for a sentencing consideration pursuant to 3553A that took into account the six months that Mr. Chang had spent in immigration detention. While Zavala arose in the 3582 context, and Mr. Chang may ultimately have an opportunity to file a habeas petition. The district court certainly could have taken the six months of pre-indictment or pre-information detention into consideration when fashioning a sentence here. But what basis is there to think that he could have gotten bail, or even a bail hearing, had he not been cooperating? I think that's what you're suggesting. He stayed in custody longer because he just agreed to forego a bail application. Absolutely. Because he was cooperating. Absolutely, and that was the reason. So in the sentencing transcript when the defense attorney says that the government was intending to deport him, but he stayed in custody in order to proffer, the point of him remaining in custody was to have those proffer sessions with the government over the six months it took to get the cooperation agreement. He could have, if he were not interested in, and he ultimately did get bail on the immigration detainer. Is it your position that this was mandatory, that the court had to give him credit for the six months, or that you acknowledge that this was a discretionary matter? It's an interesting question. I would say that the court certainly should have given him credit for this. And as a matter of calculating the sentence, if it had been established that that six month period was detention pending prosecution, I don't think the record is clear enough that that six month period was detention pending prosecution for me to say that it was mandatory that he received the six months credit. I do think that a simple evidentiary hearing that would essentially involve just production of the immigration file, which the government could order readily, in which the defense has been trying to obtain to answer this question. I also want to say one quick thing, we did not fashion this argument as a substantive unreasonable in this sentence, but I will point out that Mr. Chang had been cooperating from 2004 through 2015. Much of that time there was some criminal activity that did not discourage immigration and customs enforcement or the FBI from using him as a cooperating witness. He got no credit for any of the decade plus that he spent working with the government, providing them unchallenged by the government, information that was useful in several different prosecutions. Ultimately, I understand that the court has to consider whether the sentence as the record as a whole supports this as a reasonable sentence, and it does not. Thank you. We'll reserve decision. That completes the calendar for today. I'll ask the clerk to adjourn. Court is adjourned.